# EXHIBIT 4

Amended this ....02...... day
of ...July..2013.....
Pursuant to ...Rule.26.02(b)
~Samantha Moeller~ ..................
............................
Samantha Moeller

Court File No. CV-12-2474-00

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

BETWEEN:

### SANDRA ELSLEY

Plaintiff

and

### JOHN BORDYNUIK and <u>JOHN BORDYNUIK INC.</u>

Defendants

### <u>AMENDED</u> STATEMENT OF CLAIM

TO THE DEFENDANT

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the plaintiff. The claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for you must prepare a statement of defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the plaintiff's lawyer or, where the plaintiff does not have a lawyer, serve it on the plaintiff, and file it, with proof of service in this court office, WITHIN TWENTY DAYS after this statement of claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your statement of defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a statement of defence, you may serve and file a notice of intent to defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your statement of defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

IF YOU PAY THE PLAINTIFF'S CLAIM, and $1000 for costs, within the time for serving and filing your statement of defence you may move to have this proceeding dismissed by

2

the court. If you believe the amount claimed for costs is excessive, you may pay the plaintiff's claim and $1000 for costs and have the costs assessed by the court.

Date   June 11, 2012          Issued by   " G. Rennie "

Local registrar

Address of
court office                              Court House
                                    7755 Hurontario Ave
                                Brampton, ON   L6W-4T6

TO:

~~Mr. John Bordynuik~~
~~1776 Allanport Road~~
~~Thorold, Ontario~~
~~L0S-1KO~~

~~Tel: (905) 384-4383~~
~~Fax: (905) 384-0076~~
~~john@johnbordynuik.com~~

~~The Defendant Herein~~

TO:
John Bordynuik Inc.
c/o 1776 Allanport Road
Thorold, Ontario
L0S-1KO

Tel: (905) 384-4383
Fax: (905) 384-0076
john@johnbordynuik.com

The Defendant Herein

TO:
MCBURNEY, HENDERSON, DURDAN AND CORBETT
Lawyers
4759 Queen Street, P.O. Box 177
Niagara Falls, Ontario
L2E-6T3

3

Attention: Christopher Durdan
(LSUC No. 49777-K)

Tel: 1(905) 356-4511
Fax: 1(905) 356-8938

Lawyers for the Defendant, John Bordynuik

## CLAIM

1. The Plaintiff, Sandra Elsley claims from the Defendant, John Bordynuik:

   a. $4,000,000.00 for breach of fiduciary duty, breach of trust, negligence negligent and reckless fraudulent misrepresentation amounting to fraud, fraud and unjust enrichment.

   b. In the alternative to a. $4,000,000 for damages for breach of contract;

   c. In the alternative to a. then a Declaration that at all material times John Bordynuik had and does continue to hold 4,969,750 7,950,000 shares of JBI Inc. of Nevada, USA, in trust for Sandra Elsley.

   d. In the alternative to the quantum claimed in a. b. or the shares in c. and d. at the option of the Plaintiff then an Order that John Bordynuik transfer or cause to be transferred 4,969,750 7,950,000 shares of JBI Inc. a Nevada corporation trading under the symbol JBII, to the Plaintiff.

   e. In the alternative to amounts claimed in a. b. and the number of shares claimed in c. and d. then an Order that 7,950,000 shares of JBI Inc. be evaluated for the period of June 2009 to December 2012 and that the value of the shares be paid to Sandra Elsley for her claims for damages.

4

f.  A Declaratory Order that the purported Settlement Agreement between
    Sandra Elsley and John Bordynuik and/or John Bordynuik Inc. dated June
    25, 2009 be set aside and that it be deemed null and void and of no effect.

g.  A Declaratory Order that John Bordynuik has no interest in and that he
    release his ownership of all of his shares in John Bordynuik Inc. (hereinafter
    referred to as JBI-Delaware).

h.  A Declaratory Order that the Plaintiff Sandra Elsley is the owner of
    7,750,000 shares of John Bordynuik Inc. (herein known as JBI-Delaware).

i.  A Mandatory Order that Bordynuik do whatever is necessary and sign any
    document as required in order to ensure that all of the shareholders
    including himself, who owned shares of JBI-Nevada, release and have
    cancelled the same proportion and number of shares as they held in JBI-
    Delaware.

j.  A Mandatory Order that Bordynuik provide copies and/or originals of all
    of the share purchase agreements which he brokered (and which provided
    the JBI-Delaware shareholders with JBI-Nevada shares) in order to ensure
    the release and cancellation of their corresponding JBI-Delaware shares.

k.  An Order for substituted service upon John Bordynuik Inc. by serving the
    Statement of Claim upon John Bordynuik or in the alternative an Order
    validating service of the Statement of Claim upon John Bordynuik Inc.
    (JBI-Delaware) upon service of the claim on John Bordynuik at the offices
    of the lawyers of record in this action, for John Bordynuik.

l.  In the alternative to k. an Order dispensing with service upon John
    Bordynuik Inc.

5

    m. <u>An Order that John Bordynuik return all computer software and hardware as well as all pictures, personal and business files of the Plaintiff.</u>

    n. Pre and Post Judgment interest pursuant to S. 128 and S. 129 of the Courts of Justice Act.

    o. Costs of this action on substantial indemnity basis.

    p. Such further and other relief as this Honourable Court deems just.

2. The Plaintiff, Sandra Elsley (hereinafter referred to as Elsley) is a businesswoman who resides in the City of Niagara Falls, Ontario.

3. The Defendant, John Bordynuik (hereinafter referred to as Bordynuik) is a businessman residing in Thorold, Ontario.

4. <u>The other Defendant John Bordynuik Inc. is state of Delaware corporation (formerly known as Expedite 2, Inc. and hereinafter referred to as JBI-Delaware).</u>

5. <u>John Bordynuik Inc. (JBI-Delaware) has ceased operating and the other defendant John Bordynuik had remained as the sole officer and director. John Bordynuik Inc. has no assets but owns claims in which the Plaintiff has an interest.</u>

6. JBI Inc. is a Nevada corporation (formerly known as 310 Holdings Inc. and hereinafter referred to as JBI-Nevada) is an American publicly traded company whose shares trade on the over the counter markets termed the OTCBB (Over The Counter Bulletin Boards). Its trading symbol is JBII.

7. Bordynuik was the founder, principle shareholder, officer and director of John Bordynuik Inc. of Ontario, Canada (hereinafter referred to as JBI-Ontario). Bordynuik owned 63% JBI-Ontario while the Plaintiff, Sandra Elsley owned 13.1% of this company.

6

8. The Plaintiff had a personal relationship with Bordynuik for a number of years prior to becoming involved in JBI-Ontario, in 2005. As such the Plaintiff had personal knowledge of Bordynuik's finances.

9. The Plaintiff knows that at all times before Bordynuik's acquisition of JBI-Delaware (a Pink Sheets shell company) he had been impecunious; in fact he had, for a number of years, lived with, off of and from the generosity of the Plaintiff.

10. The Pink Sheets and the OTCBB are junior exchanges regulated by the Securities Exchange Commission of the United States. Companies list and sell their shares to the public using these exchanges

11. Between 2005 and 2008 prior to 2009 and during the course of their personal relationship, Bordynuik convinced Elsley that he had developed and owned unique legacy data tape transfer and reading technology which allowed clients to access, preserve and read large volumes of archived legacy data which had historically been stored on computer tapes.

12. Bordynuik convinced Elsley that her investment of time and money in his technology would be a worthwhile endeavour and he assured her that if she did invest in the company he would protect and ensure her investment.

13. Between 2006 and 2008 the legacy data technology and all if its value had been transferred to JBI-Ontario. JBI-Ontario's clients included NASA and MIT.

14. The Plaintiff had invested her time and money in order to be provided with 13.1% of the shares of JBI-Ontario. The Plaintiff had invested at least $200,000.00 of her time and $300,000.00 of her own money in order to acquire the shares of JBI-Ontario.

7

15. The Plaintiff is a professional ~~psychologist~~, therapist and counselor. Because of John Bordynuik's promises and the representations he had made to her about her investment in John Bordynuik Inc. of Ontario she closed her thriving practice and made a complete commitment to John Bordynuik Inc. of Ontario (JBI-Ontario).

16. In addition the Plaintiff, Elsley brought in at least 251 family members, contacts and friends as shareholders/investors in JBI-Ontario. These shareholders, all of whom were the Plaintiff's contacts, raised about $3,000,000.00 for JBI-Ontario. In turn they were given shares of JBI-Ontario, in direct proportion to their cash investment.

17. In order to facilitate more fund raising and additional investors, Bordyniuk advised Elsley that JBI-Ontario should be wholly acquired by a State of Delaware Pink Sheets shell company called Expedite 2 Inc. That latter company's name was then changed to John Bordynuik Inc. of Delaware (hereinafter referred to as JBI-Delaware and is a co-defendant).

18. The Plaintiff, Elsley was not familiar with the penny stock Pink Sheets markets and completely relied upon Bordynuik's assurances that he would protect and safeguard her investment and that she would remain a shareholder of JBI-Delaware in exactly the same proportion as she had been in JBI-Ontario.

19. Pink Sheets companies are publicly traded small capitalization (small-cap) companies, who can report to and are regulated by the Securities Exchange Commission of the United States. Such companies are considered to be high risk, often penny stock companies which are a tier below the American based OTCBB listed public companies.

20. Bordynuik had also assured and represented to all of the shareholders of JBI-Ontario that once all of its outstanding shares were acquired by JBI-Delaware each JBI-Ontario shareholder would receive a proportionate share of JBI-

8

Delaware. In fact that is what Bordynuik did for the shareholders; Elsley remained a 13.1% shareholder of JBI-Delaware. The same was done for all the other shareholders of JBI-Ontario and Bordynuik continued to own 63% of the shares.

21. Bordynuik had initially acquired all of JBI-Delaware's 100,000 outstanding shares for $30,000.00. That bought him personal control of the Pink Sheets shell company. As Bordynuik had been personally impecunious, the Plaintiff believes that Bordynuik used JBI-Ontario's money in order to make this share purchase of JBI-Delware, on behalf of the shareholders of JBI-Ontario.

22. Bordynuik then had more treasury shares of JBI-Delaware issued to him and the other 251 or so shareholders of JBI-Ontario so that the 7,750,000 shares which were provided to Elsley represented 13.1% of the outstanding and issued shares of JBI-Delaware.

23. On February 10, 2009, on behalf of and for the shareholders of JBI-Ontario Bordynuik caused JBI-Delaware to acquire all of the outstanding shares of JBI-Ontario (a reverse merger) and in turn JBI-Delaware provided the 251 (or so) shareholders of JBI-Ontario with common stock of JBI-Delaware, in accordance with each shareholders proportionate share of JBI-Ontario.

24. Bordynuik assured and represented to the shareholders that the transfer of all of the shares of JBI-Ontario (including the cash and technology within JBI-Ontario) to JBI-Delaware was for the purpose of "going public" and that JBI-Delaware would be the corporate vehicle he would use in order to do so.

25. Bordynuik had attempted to take JBI-Ontario public under Ontario law but for reasons unknown to the Plaintiff he chose a US Pink Sheets reverse merger strategy in order to do so. That necessitated the need for him to purchase a

9

controlling interest of JBI-Delaware (the initial 100,000 shares) in order to use it as the corporate vehicle to "go public".

26. Bordynuik was entrusted by the JBI-Ontario shareholders to take JBI-Ontario, its cash from the investors and legacy data technology into an American shell corporation in order raise additional funds raises, attract more investors and to "go public". The Plaintiff, Elsley believed that at all material times Bordynuik was doing as he did in order to protect her investment.

27. As Elsley owned 13.1% of JBI-Ontario, she came to own 13.1% or 7,750,000 common shares of JBI-Delaware (formerly Expedite 2 Inc.). The same was done for all 251 or so shareholders of JBI-Ontario. As such the reverse merger with JBI-Ontario was completed.

28. The Plaintiff completely trusted Bordynuik's corporate moves and as such did not believe she needed legal counsel nor advice with respect to the merger between JBI-Ontario and JBI-Delaware. The Plaintiff and all the other shareholders relied on Bordynuik (because of his representations and expertise in this area) to provide them with their proportionate shares in the new entity, JBI-Delaware.

29. Upon her departure from Bordynuik and his companies, in the latter part of 2008, the Plaintiff had repeatedly requested that Bordynuik return her computer and her business and personal files. Nevertheless to the date of this claim Bordynuik has refused to do so.

30. As a result of the acquisition of JBI-Ontario by JBI-Delaware, JBI Delaware came to own all of JBI-Ontario's shares and in turn all of the $3,000,000 (or so, which had been invested by the shareholders) as well as the legacy data retrieval technology, both of which had remained as assets on the books of JBI-Ontario.

10

31. It is the Plaintiff's understanding that at all material times JBI-Ontario remained a subsidiary of JBI-Delaware and was never dissolved; it remained an entity within JBI-Delaware.

32. Within two months of JBI-Delaware's acquisition of JBI-Ontario, the defendant Bordynuik, on behalf of and for the benefit of all the shareholders of JBI-Delaware, made the decision that he was not content with JBI-Delaware (the Pink Sheets corporation) as a vehicle from which to issue and publicly trade shares.

33. Bordynuik determined that JBI-Delaware would not be an ideal corporate vehicle for his intended plans to sell shares to the public. He then used JBI-Delaware's money (in fact its subsidiary JBI-Ontario's money) in order to acquire an OTCBB shell company called 310 Holdings Inc. (later named JBI Inc. of Nevada and trading with the symbol JBII).

34. The OTCBB exchange had greater and more complete reporting requirements and allowed for a more robust shares market and exchange than did the Pink Sheets market; as such Bordynuik made his decision to acquire JBI Inc. of Nevada.

35. On behalf of the shareholders of JBI-Delaware, John Bordynuik paid the controlling shareholder of JBI-Nevada $80,000.00 ~~about $200,000.00~~ or so for 40,250,000 of the 63,000,000 ~~70,000,000~~ or so, outstanding shares of JBI-Nevada.

36. As of April 2009 the Defendant Bordynuik became an officer, majority shareholder and director of JBI, Inc. (JBI-Nevada).

37. As Bordynuik had done in the JBI-Ontario to JBI-Delaware transaction, he promised all of the JBI-Delaware shareholders, including the Plaintiff, that he would arrange for their proportionate number of JBI-Delaware shares to be converted to JBI-Nevada shares. Relying on these assertions, the JBI-Delaware

11

shareholders entrusted Bordynuik to arrange for and he admittedly brokered a number of share purchase agreements wherein the JBI-Delaware shareholders, for nominal amounts of money, purchased from other third party shareholders of JBI-Nevada, the number of shares which would provide each JBI-Delaware shareholder with about the same proportion of JBI-Nevada shares. At the same time, the share purchase agreements called for each JBI-Delaware shareholder to release their right and ownership of JBI-Delaware shares.

38. Bordynuik also asserted that he too released his interest in his shares of JBI-Delaware when he acquired his interest in JBI-Nevada.

39. The acquisition of JBI-Nevada was arranged for any shareholder of JBI-Delaware who wanted to do so. It is the Plaintiff's belief that all or most of the JBI-Delaware shareholders did just that and opted to take their proportionate interest in JBI-Nevada and to relinquish and release their shareholding interest in JBI-Delaware.

40. The Plaintiff, relying on the information, guidance and assertions provided by Bordynuik, believed that by engaging in a transfer of her JBI-Delaware shares to JBI-Nevada, she would receive 13.1% of JBI-Nevada shares. However, the Plaintiff was only provided with less than one half of one percent of JBI-Nevada shares. She was treated in the same manner as other shareholders of JBI-Delaware who had owned only one half of one percent of JBI-Delaware. The Plaintiff was treated prejudicially and to her detriment in this transaction as she owned 13.1% of JBI-Delaware and was to have owned 13.1% of JBI-Nevada (i.e. 7,950,000 of the issued shares of JBI-Nevada).

41. As a result of the manner in which the Plaintiff was treated she has only received 300,000 shares of JBI-Nevada and for which she concurrently released her interest in 300,000 shares in JBI-Delaware. As the Plaintiff did not receive the full 13.1% of shares owed to her in JBI-Nevada, the Plaintiff still has an interest in

12

7,450,000 shares in JBI-Delaware. As such she remains a majority if not the only shareholder of JBI-Delaware.

42. Bordynuik provided the acquired shares of JBI-Nevada to the shareholders of JBI-Delaware (except to the Plaintiff) in the same proportion to their ownership of JBI-Delaware and in turn JBI-Delaware sold/transferred all of its assets and about $3,000,000.00 in cash (presumably from its subsidiary JBI-Ontario) to JBI-Nevada.

43. Bordynuik had assured Elsley that her interest and investment in all of the shares and assets of JBI-Ontario which had been transferred to JBI-Delaware and which in turn were being transferred to JBI-Nevada were protected in that she would remain a shareholder of JBI-Nevada in the same proportion, that is 13.1%.

44. Elsley was not experienced in the US penny stock market nor t in managing corporate restructuring decisions; she completely relied on Bordynuik's honesty and integrity throughout the process of "going public".

45. It was the understanding and the agreement Bordynuik had with the shareholders of JBI-Delaware; he was entrusted as a fiduciary and agent in order to carry out that plan of "going public" with any corporate vehicle which could raise money and market the legacy data technology.

46. Bordynuik did then complete and in his words he "brokered" the transfer of JBI-Nevada shares to the shareholders of JBI-Delaware by identifying third party owners of JBI-Nevada shares and ensuring that they transferred the requisite number of shares for a nominal value, to the JBI-Delaware shareholders. However he excluded the Plaintiff from her proportionate transfer of JBI-Nevada shares. using the 40,250,000 control block of shares he and his proxy companies had initially acquired.

13

47. In June of 2009 JBI-Delaware transferred all of the assets of any value from JBI-Delaware and this corporation's subsidiary (JBI-Ontario) to the JBI-Nevada company. Bordynuik completed that asset transfer for 809,000 of JBI-Nevada's shares, said amount of shares having had nominal value of about $1600.00 $4000.00 only weeks before the asset sale. Nevertheless on the day of the asset transfer, shares of JBI-Nevada had traded between $0.50 to $2.00 per share and continued to trade above $1.00 for some time thereafter.

48. As Bordynuik's admitted restated value of the assets of JBI-Delware was $343,000 the sale of these assets (on June 27, 2009) for 809,000 shares of JBI-Nevada gave the shares an implicit value of $0.424. This also implied that Bordynuik's 40,250,000 shares of JBI-Nevada were then worth an inflated $17,066,000 (he had purchased them in April 2009 for $80,000.00).

49. As such it is the Plaintiff's position that JBI-Nevada's share value was grossly exaggerated and that a few weeks of its stock trading at this level was contrived, manipulated and completely unrealistic. As such JBI-Delaware was not fairly paid for its asset sale/transfer.

50. Nevertheless so long as the shareholders of JBI-Delaware received the same proportionate share in JBI-Nevada it was of no concern to them that JBI-Delaware transferred its cash and technology to JBI-Nevada for nominal consideration or below fair market value.

51. The 809,000 shares of JBI-Nevada had a nominal value of about $1600.00 $4,000.00 just a few weeks prior to the asset transfer. That is because in April of 2009 Bordynuik acquired the 40,250,000 shares of JBI -Nevada for about $200,000.00, $80,000.00 thereby giving the shares a value of less than two tenths of a penny per share ($0.00198) half a cent.

52. It is noteworthy that on June 25, 2009 JBI--Delaware also paid $200,000.00 for 66,667 shares of JBI-Nevada. At $3.00 per share this was an artificially inflated

14

price for shares which had just weeks prior to this share purchase, been almost worthless. ~~than half a penny~~. At the same time Bordynuik had given the shares a value of $0.424, not $3.00. As such he and JBI-Nevada should have at least 400,000 to 500,000 shares of JBI-Nevada for the $200,000 JBI-Nevada took from JBI-Delaware.

53. The Plaintiff claims that Bordynuik needed this $200,000 as a source of cash to pay for the control block of 40,250,000 shares of JBI-Nevada.

54. Bordynuik has also admitted that since the asset transfer JBI-Delware no longer has any money nor assets and is completely in-operational.

55. Again it was of no concern to the shareholders of JBI-Delaware that JBI-Nevada received $200,000 from JBI-Delaware for an insignificant number of shares of JBI-Nevada since they were assured and most of them did receive the proportionate number of shares in JBI-Nevada as they owned in JBI-Delaware.

56. The assurance of share proportionality in JBI-Nevada was given by John Bordynuik to the shareholders of JBI-Delaware; it was made by him personally as a contractual obligation to the shareholders of JBI-Delaware. In return none of the shareholders objected to the asset transfer from JBI-Delaware to JBI-Nevada for an amount of shares that was less than fair market value and in a situation when Bordynuik had a clear conflict of interest (as he controlled both companies during the asset sale).

57. In return for the cooperation of the shareholders (no objection to the sale of the assets of JBI-Delaware) Bordynuik enjoyed at least a 500 to 3500 times appreciation of his JBI-Nevada shares within two months (he purchased them for $0.002, two tenths of a cent per share in April of 2009 and by June of 2009 the shares were trading at $1.00 and hit a high of $7.75 within six months).

15

58. Bordynuik used JBI-Delaware (and its subsidiary JBI-Ontario's assets and the
$3,000,000 it had in its treasury) in order to acquire and then operate JBI-Nevada.
Without JBI-Ontario and its technology and money, JBI-Delaware and JBI-
Nevada had very little value. They were simply shell companies used for the
purpose of "going Public".

59. So long as the original share holders of JBI-Ontario and then JBI-Delaware were
provided with their proportionate shares of the final acquisitor, JBI-Nevada they
were content to have their initial investment of cash and technology transferred to
JBI-Nevada for little or no consideration. That is the risk they did take in order to
trade their shares on a public US exchange like the OTCBB.

60. The Plaintiff states that in addition to having a fiduciary and trust obligation to her
to transfer to her the right number of shares in JBI-Nevada, Bordynuik had a
contractual obligations to all of the JBI-Delaware shareholders to provide them
with their proportional interest in JBI-Nevada.

61. By so promising the JBI-Delaware shareholders, these shareholders did not object
to the asset transfer from JBI-Delaware to JBI-Nevada as they would receive
proportional shares in JBI-Nevada and John Bordynuik's share value in JBI-
Nevada would and did rise dramatically as a direct result of the shareholders of
JBI-Delaware consenting to the assets transfer; this when John Bordynuik was
acting for both companies in a clear conflict of interest.

62. ~~Although the acquisition of all of JBI-Delaware's assets by JBI-Nevada was paid
for with 809,000 shares of JBI-Nevada's stock (having had a nominal value of
$1600.00 $4000 just two months prior) but for Elsley's interest and a couple of
other minor shareholders, the shareholders of JBI-Delaware were also provided
with the same proportion of shares in JBI-Nevada as they had owned in JBI-
Delaware (and JBI-Ontario). As such they were not concerned that JBI-Nevada
had acquired all of JBI-Delaware's assets for nominal value.~~

16

63. ~~The acquisition of all of JBI-Delaware's assets would not have given JBI-Nevada any more of a startup value than between $3,000,000.00 to $6,000,000.00. With 70,000,000 shares of JBI-Nevada as the total outstanding number of shares, the company still had a value of less than 10c per share.~~

64. ~~Using JBI-Nevada's public trading status, and using the news of the acquisition of the assets of JBI-Delaware, Bordynuik was able to, in what appears to be a series market making transactions, increase the value of the stock and the value of the JBI-Nevada shares from $0.002 to between $1.00 and $2.00 within two months. The shares hit a high of $7.75 within six months.~~

65. Between 2009 and 2012 JBI-Nevada's shares have continuously traded between $1.00 and $7.~~75~~00, that is, between 500 and more than 3500 times~~10 and 70 times~~ their original value before the acquisition of the JBI-Delaware assets ~~and inherent asset value.~~ The volume has regularly been several hundred thousand shares per day.

66. ~~As part of Bordynuik's agreement and obligation to the shareholders of JBI-Delaware he was to provide the same portion of shares of JBI-Nevada as had been owned by each of the 251, or so, shareholders of JBI-Delaware.~~

67. Bordynuik used JBI-Delaware's money to buy the JBI-Nevada shares and he transferred all of JBI-Delaware's assets which were of any value. Furthermore $3,000,000 or so which should have remained in JBI-Delaware's subsidiary's treasury has apparently disappeared or had been transferred to and used by JBI-Nevada and Bordynuik. John Bordynuik has admitted that JBI-Delaware has no assets nor any money after it provided the last $200,000 to JBI-Nevada.

68. By June 25, 2009 ~~April 23, 2009~~ Bordynuik and his proxy companies Beverly Hills Capital Corp and Westside Capital Corp. (both US companies) had provided the Plaintiff with 303,000 shares of JBI-Nevada. Nevertheless, Elsley should have

17

had 13.1% of Bordyniuk's JBI–Nevada shares transferred to her in order to maintain the same 13.1% proportionate interest she had in JBI-Delaware.

69. As Bordynuik had initially acquired 40,250,000 shares of JBI-Nevada, that bloc of shares was to be ~~and for some shareholders it was~~, used in order to maintain for the shareholders of JBI-Delaware ~~distributed to them in~~ the same proportion of JBI-Nevada shares as their shareholding in JBI-Delaware. Elsley was to have received 13.1% of the 63,000,000 shares outstanding, that being 7,950,000 ~~5,272,750~~ shares of JBI-Nevada.

70. The Plaintiff, Elsley states that Bordynuik holds 7,950,000 ~~5,272,750~~ shares for her by way of resulting or constructive trust and that she is the legal beneficiary of those shares. Otherwise Bordynuik would be unjustly enriched by depriving Elsley of her 13.1% share of JBI-Nevada.

71. Since June of 2009 to the present JBI-Nevada has issued more of its treasury shares to the public and has raised capital on several occasions, to date. The Plaintiff knows of at least $40,000,000 ~~$18,000,000~~ or so in additional cash raises which JBI-Nevada has undertaken and reported since 2009.

72. Elsley now demands that Bordynuik compensate her for the value of her 7,950,000 ~~5,272,750~~ shares (less 303,000 shares which had been transferred to her) of JBI-Nevada or that he provide her with that many free trading shares of JBI-Nevada, whichever has more value to her at the time Bordynuik was to have provided the shares.

73. In conducting the affairs of JBI-Ontario, JBI-Delaware and JBI-Nevada as he had done :

   a.  Bordynuik has wrongly deprived Elsley from her 13.1% interest in JBI-Nevada and has caused her damages.

18

b.  Bordynuik has as of July 2009, not explained nor accounted for the $3,000,000 raised from the shareholders of JBI-Ontario. According to the JBI-Delaware and JBI-Nevada filings that money should have remained in JBI-Ontario, a subsidiary of JBI-Delaware, but it has not. It should now be accounted for in JBI-Nevada.

c.  Bordynuik has wrongfully converted the $3,000,000 which had been, through the sole efforts of Elsley, been raised for JBI-Ontario and which should now be held by its parent JBI-Delaware or accounted for by JBI-Nevada or Bordynuik.

d.  Bordynuik has also converted or fraudulently conveyed JBI-Delaware's assets (presumably the assets held in the subsidiary JBI-Ontario) as these assets were sold for only 809,000 shares of JBI-Nevada, at a time when JBI-Nevada's share value was less than one fifth half of once cent immediately before the sale.

e.  Bordynuik wrongly converted or fraudulently conveyed, for his own purpose, $200,000 of JBI-Delaware's (in fact its subsidiary JBI-Ontario's) money and in exchange he provided JBI-Delaware with only 66,667 (an artificial price of $3.00 per share) of JBI-Nevada at a time when these shares had a value of no more thant $333.00 (half a penny a share) to $28,267.00 (at $0.424 cents per share).

f.  That is he sold JBI-Nevada stock to JBI-Delaware for $3.00 per share at a time when JBI-Nevada's stock was not worth more than half a cent and at most $0.424 cents per share. That was a conflict of interest as in so doing Bordynuik put his own interest ahead of those of JBI-Delaware and its shareholders at a time when he had a fiduciary obligation to JBI-Delaware, its subsidiary JBI-Ontario, and its shareholders, including Elsley.

g.  Bordynuik breached his fiduciary duty to the Plaintiff in that he had a strong personal relationship based on trust, with Elsley, she relied on that that relationship as she was in an entirely vulnerable position and with his knowledge she relied on him to guide her and protect her interest and share holdings.

19

h.  Bordynuik treated the shareholders of JBI-Delaware prejudicially. In some cases JBI-Delaware's shareholders received their fair portion of JBI-Nevada and in others, such as that of the Plaintiff, they did not.

i.  The Plaintiff, Sandra Elsley only received 303,000 shares of JBI-Nevada. She was intentionally misled and, deceived and defrauded by Bordynuik into believing that her investment and 13.1% ownership of JBI-Ontario and JBI-Delaware would be preserved as Bordynuik went about selecting the right corporate vehicle with which to go public.

j.  Bordynuik negligently and recklessly mis-represented the quality of the JBI-Nevada shares and he misled and deceived Elsley into making her financial and in kind contributions and investment in JBI-Ontario. He negligently and recklessly misrepresented the value and quality of the JBI-Nevada shares and he defrauded and deceived Elsely when he advised her that she would be receiving 300,000 shares of JBI-Nevada in each quarter, until her shares were all advanced.

k.  Bordynuik also negligently and recklessly misrepresented the value and quality of the JBI-Nevada shares and he misled and deceived Elsley by advising her that 303,000 shares were all that could be provided to her for her to trade in the market when he knew such was not the case.

l.  By keeping Elsley's shares in JBI-Nevada to himself Bordynuik was unjustly enriched at the Plaintiff's expense for no juristic reason. As such he holds 7,950,000 5,272,750 shares of JBI-Nevada (less the 303,000 which he had provided to her) by way of resulting or constructive trust for Elsley.

m.  Bordynuik did not allow Elsley to trade the shares he held in trust for her in JBI-Nevada. In so doing he denied her the opportunity to realize on her investment in JBI-Ontario and prevented from earning at least $4,000,000.00 or more had she been able to sell the shares to which she had been entitled in JBI-Nevada.

20

74. The use of and the transfer of JBI-Delaware's assets and money to JBI-Nevada and Bordynuik is only legally justified if all of the shareholders were provided with a proportionate number of shares in JBI-Nevada.

75. Any other allocation is fraudulent, a breach of trust and a breach of Bordynuik's fiduciary duty to the shareholders he represented and acted for when he went about the business of taking JBI-Ontario public. That because Bordynuik would otherwise be preferring his interest in JBI-Delaware and JBI-Nevada to the interests of the other shareholders.

76. Elsley claims that Bordynuik has held and now holds by was of a resulting trust, 7,950,000 5,272,750 shares of JBI-Nevada (of which he has provided her with only 303,000 shares). Elsley demands the rest of her shares or that she be compensated for their value of at least $4,000,000.00.

77. Elsely makes no further demands for monetary compensation for the value of her shares, other than the amount she has claimed herein, of $4,000,000.00.


THE PURPORTED STOCK DOCUMENT

78. At a motion for a Mareva Injunction in these proceedings, the Defendants produced a document allegedly signed by Elsley on June 25, 2009 (the "June 25 Document"). The June 25 Document is not signed by anyone else. Elsley denies signing this document and denies that the June 25 Document is effective to alter her legal interests in the assets or business of JBI-Delaware or of JBI-Nevada.

79. The June 25 Document was purported given to Elsley by the defendants to offer her two options:

    a. Elsley could opt to take 7,775,000 "restricted" shares representing approximately 13.1 % of JBI-Nevada on the condition that Elsley release her ownership of all JBI-Delaware stock" ("Option 1"); or

21

b.  Elsley could opt to take 300,000 "free trading" shares of JBI-Nevada and keep her shares of JBI-Delaware ("Option 2").

80.     If this Court finds that Elsley signed the June 25 Document and selected Option 2, Elsley states that if Option 2 provided her with any value or consideration less than the equivalent of a 13.1% shareholder interest in the business of JBI-Delaware and of JBI-Nevada, she signed it without any advice or knowledge of its nature, substance, subject matter or, if any, legal consequences and was provided with no advice or opportunity to obtain independent advice.  The defendants would have obtained Elsley's signature under circumstances where she had no opportunity to understand the nature, substance, subject matter or, if any, legal consequences of what she was signing.

81.     If this Court finds that Elsley signed the June 25 Document and selected Option 2, Elsley states that if Option 2 provided her with any value or consideration less than the equivalent of a 13.1% shareholder interest in the business of JBI-Delaware and of JBI-Nevada, she was negligently or intentionally misled by the defendants to understand that she would retain a 13.1% shareholder interest in JBI-Delaware and of JBI-Nevada and thereby be treated equitably with all other shareholders by retaining her proportionate shareholder interest in their business. In addition, the defendants falsely misrepresented to Elsley that Option 1 was very significantly inferior to Option 2, leading her to select the option which she was told would best allow her to effectively retain her 13.1% shareholder interest in the business of JBI-Delaware and of JBI-Nevada.  In particular, the defendants represented to Elsley:

(i)  that the U.S. Securities and Exchange Commission or other rules prevented or limited the transfer of JBI-Nevada shares to her;
(ii)  that there were severe restrictions on the ability of a holder of JBI-Nevada shares to freely trade  those shares;
(iii)  that the shares of JBI-Nevada would likely never be freely traded, rendering their market value low or even negligible;

22

(iv)  that neither the defendants nor JBI-Nevada could do anything which would
allow Elsley to freely sell JBI-Nevada shares.

(v) that the defendants could only transfer to the Plaintiff a maximum of 300,000
shares of JBI-Nevada per quarter.

82.    If this Court finds that Elsley signed the June 25 Document and selected Option 2,
Elsley states that if Option 2 provided her with any value or consideration less than the
equivalent of a 13.1% shareholder interest in the business of JBI-Delaware and of JBI-
Nevada, it was induced by the defendants' exercise of undue influence and duress upon
her, having regard for the personal relationship between Elsley and Bordynuik, the
dominant and "insider" position Bordynuik held as the directing mind of JBI-Ontario,
JBI-Delaware and JBI-Nevada, and the trust and confidence Elsley placed in Bordynuik
to give advice and truthful information to her in connection with her investment in the
business.

83.    If this Court finds that Elsley signed the June 25 Document and selected Option 2,
Elsley states that if Option 2 provided her with any value or consideration less than the
equivalent of a 13.1% shareholder interest in the business of JBI-Delaware and of JBI-
Nevada,  it was and is an unconscionable bargain.

84.    If this Court finds that Elsley signed the June 25 Document and selected Option 2,
Elsley states that if Option 2 provided her with any value or consideration less than the
equivalent of a 13.1% shareholder interest in the business of JBI-Delaware and of JBI-
Nevada, the defendants' objective was to wrongfully take away, without adequate
consideration to her in return, at least $4,000,000 in shareholder value and the related
voting rights associated therewith, in favour of themselves.

85.    If this Court finds that Elsley signed the June 25 Document and selected Option 2,
Elsley states that if Option 2 provided her with any value or consideration less than the
equivalent of a 13.1% shareholder interest in the business of JBI-Delaware and of JBI-
Nevada, the defendants breached a fiduciary duty they had to her to act honestly, in good

23

faith and in her best interests to see that her 13.1% shareholder interest in the business of
JBI-Delaware and of JBI-Nevada was preserved for her.

86.    If this Court finds that Elsley signed the June 25 Document and selected Option 2,
Elsley states that if Option 2 provided her with any value or consideration less than the
equivalent of a 13.1% shareholder interest in the business of JBI-Delaware and of JBI-
Nevada, Elsley pleads that the defendants were thereby unjustly enriched by taking away
from her, without adequate consideration in return, such shareholder value and the related
voting rights associated therewith, in favour of themselves.

87. John Bordynuik also submitted himself to the same release provision of JBI-
Delaware stock as per the condition Option 1 which states "John Bordynuik affirms these
are the same conditions of the restricted stock he owns in 310 Holdings Inc. [JBI-
Nevada]." Thus, in accordance with the Document, by having taken 40,250,000 restricted
shares of JBI-Nevada, Bordynuik also intended to and he did release all of his ownership
of his JBI-Delaware stock. As such, it is the Plaintiff's position that she remains the only
significant, if not the only, shareholder of JBI-Delaware due to her 7,750,000 share
interest in JBI-Delaware.

88. JBI-Delaware as a corporation had no contract nor duty to shareholders who opted
for JBI-Nevada shares. On the basis of Bordynuik's assertions that it had sold its assets
for fair market value to JBI-Nevada there was no consideration for it to have ensured, for
those of its shareholders who so opted, that it would provide a proportional number of
shares of JBI-Nevada.

89. Bordynuik undertook his fiduciary and contractual obligation to the JBI-Delaware
shareholders as a duty which was extraneous to JBI-Delaware and which was part of his
ongoing relationship with the initial shareholders of JBI-Ontario and JBI-Delaware,
including the Plaintiff.

24

90. The purported Settlement Agreement was mistakenly placed on JBI-Delaware letterhead when he was undertaking his own personal obligation.

91. It would have been a conflict of interest for JBI-Delaware to have undertaken to provide JBI-Nevada shares to its shareholders as it was of no interest to its remaining shareholders, such as the Plaintiff, to have done so. Furthermore it was only Bordynuik who could have assured the JBI-Delaware shareholders of proportionality as he owned sufficient shares to have done so.

92. Bordynuik personally undertook unique fiduciary and contractual obligations and responsibilities to all the founding shareholders of JBI-Ontario which in turn merged completely with JBI-Delaware and which in turn transferred all of its assets to JBI-Nevada. The shareholders trusted him and they were naïve.

93. Bordynuik's unique relationship with the Plaintiff Sandra Elsley made her vulnerable and created a relationship of trust. Elsley was Bordynuik common law spouse and as a naïve business person with no access nor reason to access US lawyers for advice she relied completely on Bordynuik's promises to deal fairly with her interest.

94. Elsley had provided much of the start up capital for JBI-Ontario and that in turn launched Bordynuik's efforts to take the enterprise to the public US markets. Bordynuik as a director and shareholder benefited from all of what was provided to him by Elsley and by not providing her with her proportional interest in JBI-Nevada he has deprived her of her shares and benefited at her expense.

95. Bordynuik as a shareholder and director of JBI-Nevada has breached his trust and fiduciary obligations he had with Elsley. Although a director's fiduciary duties are normally reserved for the corporation in this instance his special relationship with Elsley, his undertakings to her and the benefits he acquired from that relationship established a trust and fiduciary relationship with the Plaintiff and which Bordynuik has breached.

25

96. As a shareholder and director of JBI-Nevada Bordynuik has benefited at the expense of Elsley. He has a duty to ensure (as he did with the other shareholders of JBI-Delaware) that she be treated fairly and that she not suffer losses and from which he benefits.

97. By not providing Elsley with her fair portion of shares of JBI-Nevada as Bordynuik advised her he would, Bordynuik was not acting within the parameters of his obligations as a director of either JBI-Nevada and JBI-Delaware.

100. Maintaining Elsley's fair share of JBI-Nevada was not a duty of JBI-Nevada and would have had no effect upon the company's valuation as the shares Elsley claims would have and should have come from Bordynuik's 40,250,000 shares or from the third party shareholders who had agreed to sell their shares (with Bordynuik having acted as broker) to the other JBI-Delaware shareholders, for a nominal amount.

101. As such all of Elsley's claims to her fair share of JBI-Nevada are against Bordynuik personally.

102. Throughout their relationship during the latter part of 2008 and to July of 2009 Bordynuik made the following negligent and reckless misrepresentations to the Plaintiff:

   c.  She would be the owner of 13.1% of JBI-Nevada
   d.  That he could not, due to SEC rulings on Rule 144, transfer more than 300,000 shares to her
   e.  That he could not transfer to her any more than 300,000 share of JBI-Nevada per quarter
   f.  That she could not sell any more that 1% of the issued and outstanding stock of JBI-Nevada in any quarter.
   g.  That her shares of JBI-Nevada would most likely never be free trading and could not be sold.
   h.  That neither he nor JBI-Nevada could do anything which would allow the Plaintiff to freely sell her shares.

26

      i.   That 13.1% of JBI-Nevada was almost worthless.

      j.   That she was not entitled to all of her JBI-Nevada shares

103. As such Elsley was misled by Bordynuik's negligent mis-representations about the quality and quantity of the stock which she claimed in JBI-Nevada. Bordynuik also stood to gain from his misrepresentations to Elsley as this maintained him as the majority and strongest shareholder of JBI-Nevada with sufficient shares to run the company as he pleased.

104. Because of the Defendant Bordynuik's actions the Plaintiff Elsley has suffered damages of at least $4,000,000.00.

105. The Plaintiff requests that this action be tried in Brampton, Ontario.

**FREDERICK SIMON HAWA**
Barrister and Solicitor
Toronto, Ontario
M5J-2N8

Tel: (416) 252-5190
Fax: (416) 252-5842
LSUC No. 27921I 1A

Lawyer for the Plaintiff

SANDRA ELSLEY
PLAINTIFF

(Short title of proceeding)

JOHN BORDYNIUK ET. AL.
DEFENDANT
**Court File No. CV-12-2474-00**

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceedings Commenced at BRAMPTON

---

AMENDED STATEMENT OF CLAIM

---

*Name, address and telephone number of moving party's solicitor or moving party*
**FREDERICK SIMON HAWA**
Barrister and Solicitor
20 BAY STREET
Suite 1100
Toronto, Ontario
M5J-2N8

Tel: (416) 252-5190
Fax: (416) 252-5842
LSUC NO. 279211

LAWYER FOR THE PLAINTIFF